Charles RANKINS, Plaintiff,

v.

THE LONG TERM DISABILITY PLAN FOR EMPLOYEES OF THE FRANK-LIN LIFE INSURANCE CO., and Franklin Life Insurance Co., As Administrator of the Long Term Disability Plan for Employees of the Franklin Life Insurance Co., Defendants.

No. 97–3300.

United States District Court,
C.D. Illinois,
Springfield Division.

June 30, 1998.

Mark A. Wells, Springfield, IL, David L. Lee, Chicago, IL, for Plaintiff.

James Harbert, Chicago, IL, Matthew J. Maddox, Springfield, IL, for Defendants.

## OPINION

RICHARD MILLS, District Judge.

ERISA suit challenging Plan Administrator's denial of benefits.

The Plan Administrator's record, however, is inadequate to enable this Court to conduct a meaningful review.

Therefore, a remand is necessary.

## I. BACKGROUND

Charles Rankins ("Rankins") claims he was employed by Franklin Life Insurance Company ("the Franklin") from July 24, 1989 to March 4, 1993.[1] He was a participant in and beneficiary of the Long Term Disability Plan for Employees of the Franklin Life Insurance Company ("the Plan").

---

1. The Franklin denies that Rankins performed services continuously for the Franklin and claims that Rankins' performance of services ended on or about May 10, 1992 with only a brief return from about July 11, 1992 through August 3, 1992.

Rankins suffers from advanced osteoarthritis of his left that condition, or a precursor condition, since October 1991. On October 7, 1992, Rankins' doctor informed Defendants that Rankins was diagnosed with advanced osteoarthritis and that it was his opinion that Rankins was disabled because of that condition.

Rankins claims he is entitled to disability benefits under section 3.1(B) of the Plan document, which provides:

> (B) An Employee who has been in the employment of the Company for a period of 3 years or more shall receive his regular salary for 8 weeks and thereafter shall receive 75% of this salary for the additional period of 18 weeks, and thereafter shall receive, if he is at that time disabled as defined in Section 2.1(E) hereof, a sum equal to 60% of his average monthly compensation actually paid during the 12 month period next preceding the onset of his disability, . . . .

In a letter dated March 4, 1993, Rankins was informed by the Franklin that:

> Due to your doctor's restrictions, leaving you unable to perform your regular job duties, we must consider you to be disabled. However, you have not been employed at Franklin long enough to be eligible for Long Term Disability Benefits.

> It is and has been the practice of Franklin to terminate the employment of individuals on unpaid leave after three months. Since you have been absent for more than three months, your employment is now being terminated.

Rankins claims that although he falls within the provisions of the Plan, Defendants have refused and continue to refuse to pay him the long term disability benefits to which he is entitled. Consequently, Rankins brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") seeking long term disability benefits under the Plan.

## II. ANALYSIS

The Franklin seeks to remand this case to the Plan Administrator claiming that: a) the Plan Administrator has, by the terms of the Plan, discretion to pay or deny claims; b) because the Plan Administrator has such discretion, this Court reviews the Plan Administrator's decision under the arbitrary and capricious standard and should reverse only if it is clearly unreasonable; . c) however, the Plan Administrator failed to make certain factual determinations; d) therefore, because the administrative record is inadequate for a complete review by this Court, the Court should remand the case to the Plan Administrator.

Specifically, the Franklin claims that if a plan participant is entitled to the benefits of section 3.1(B), two different definitions of disability apply. Section 2.1(E) of the Plan provides:

> "Disability" and "disabled" shall mean illness or accidental injury and being under the continuing and regular care of a legally qualified physician and:

> (1) During the first 2 years of any one period of disability, the complete inability to perform the ordinary and necessary duties of the Employee's occupation;

> (2) Thereafter during any further period of disability, the complete inability of the Employee to engage in any gainful occupation for which he is reasonably qualified by education, training or experience.

The Franklin argues that due to the two definitions of "disabled," a person may cease to be disabled under the Plan at the end of two years even if his physical condition does not change at all.

The Franklin points out that when considering Plaintiff's claim, the Plan Administrator did not make a determination of whether or not Plaintiff's physical condition was such that he had a "complete inability . . . to engage in any gainful occupation" under section 2.1(E)(2) of the Plan document. Rather, the Plan Administrator only made a determination of Plaintiff's "complete inability to perform the ordinary and necessary duties of [his] occupation" under section 2.1(E)(1) of the Plan document. This was the determination of disability described in the letter to Plaintiff dated March 4, 1993.

Additionally, the Plan Administrator failed to make a determination of the precise amount of monthly benefits that would be

owed to Plaintiff were it determined that he was eligible for the additional benefits he claims. Because of those deficiencies, the Franklin seeks a remand of this matter to the Plan Administrator because the administrative record is inadequate for a complete review by this Court.

Plaintiff objects to the motion claiming that a remand is inappropriate.

First, Plaintiff claims that in this Circuit, if a plan administrator fails to make factual findings, the proper procedure is to hold a trial on any contested issues needed for the decision. Thus, because the Plan Administrator did not make certain factual findings, this Court must arrive at its own factual findings following a trial on any contested facts.

Second, Plaintiff argues that a remand is inappropriate because the Franklin has waived any request for remand by waiting until late in the case to present that request. This case is set for trial on the September trailing trial calendar and a remand would delay this trial date unnecessarily.

■ The Court will first address whether the Plan conferred discretion on the Plan Administrator. *Ramsey v. Hercules, Inc.*, 77 F.3d 199, 205 (7th Cir.1996). The reason this determination is important is because the United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the administrator is given discretionary authority, the appro-

priate standard of review is the deferential "arbitrary and capricious" one. *Ramsey*, 77 F.3d at 202 (citing *Firestone*, 489 U.S. at 111, 109 S.Ct. 948)[2].

■ To determine whether the Plan gives the Plan Administrator discretionary authority, this Court must review the language of the Plan. *Ramsey*, 77 F.3d at 205. The Plan provides the following in regard to the administration of the Plan:

> 9.2 Powers and duties. The Committee shall administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provision of the plan. The Committee shall interpret the Plan and shall determine all benefits and resolve all questions and disputes arising in the administration, interpretation and application of the Plan in a uniform manner, including, but not by way of limitation, the power to determine all questions of eligibility and of the status and rights of Employees. Any such determination by the Committee shall be conclusive and binding on all persons.

The Franklin claims this clause clearly gives the Plan Administrator discretionary authority to pay or deny claims. The Court agrees. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990) (because plan "empower[ed] trustees 'to construe and interpret the plan,'" court reviewed trustees' determination under abuse of discretion standard).

Therefore, *de novo* review is not required; instead, the Court must apply a deferential standard of review to the Plan Administrator's determination. As pointed out by the Franklin, the Plan Administrator did not make a determination as to whether Plaintiff's physical condition fell within section 2.1(E)(2) of the Plan nor did it determine the

---

**2.** The Seventh Circuit has further refined this issue. In *Morton v. Smith,* the court determined that:

> The extent of discretion determines the extent of judicial deference. When fiduciaries have the discretion to make "reasonable" interpretations of a plan, their decisions are reviewed according to the familiar abuse-of-discretion standard. A decision constitutes an abuse of discretion when it is "not just clearly incorrect but downright unreasonable." When fiduciaries are bound to interpret the plan under the

broad standard of good faith, their discretion is even more extensive, and judicial review is even more deferential. Courts will then examine the exercise of this degree of discretion to determine whether it is arbitrary and capricious.

91 F.3d 867, 870 (7th Cir.1996) (citations omitted). The Court need not decide that precise issue in the instant case. It is enough, at this point, to determine whether *de novo* review or a more deferential standard of review is required.

amount of benefits Plaintiff would receive if eligible. Thus, at this point, the record is inadequate.

■■] Plaintiff cites to *Casey v. Uddeholm Corp.*, 32 F.3d 1094 (7th Cir.1994), for the proposition that where no factual determination has been made by the administrator, the court should apply the *de novo* standard of review and arrive at its own factual findings in determining whether benefits were properly denied. That case, however, is clearly distinguishable.

In *Casey*, the plaintiff had attempted to commit suicide by throwing himself in front of an elevated train. *Casey*, 32 F.3d at 1095. He survived, but was severely injured. *Id.* The plan administrator refused to pay the medical bills because the injuries were not "sustained accidentally" as the plan required. The plaintiff sued under 29 U.S.C. § 1132(a)(1)(B).

Because the plan did not grant discretion to the administrator to construe the terms of the contract, the district court conducted a *de novo* review when it examined the plaintiff's challenge to the administrator's adverse interpretation of the language of the plan. *Id.* at 1096. The district court rejected the plan administrator's interpretation of "accidental" and cited cases that stood for the proposition that: 1) "suicide-while-insane" was accidental; and 2) that "a self-inflicted injury was covered by the plan if the person attempting suicide 'lacked the capacity for effective choice' or was subject to an 'affliction' which gave rise to an 'irresistible impulse' to attempt suicide." *Id.* at 1097. The plan administrator had not addressed those issues. Therefore, the district court conducted "an independent review," analyzed and weighed the conflicting evidence before the administrator, and concluded that the plaintiff was not insane. *Id.* at 1099. Summary judgment was granted to the defendants.

The Seventh Circuit reversed, stating that the district court had improperly weighed the evidence in the case. *Id.* The Court stated that because the administrator had made no factual determination, the district court should have applied, as it did, a *de novo* standard of review and arrive at its own factual findings in determining whether benefits were properly denied. *Id.* The appropriate proceeding for that, however, would have been a bench trial, not disposition on summary judgment. *Id.* Therefore, the case was remanded to the district court.

There are three reasons the *Casey* case does not support Plaintiff's claim that where a plan administrator fails to make factual findings, the proper procedure is to hold a trial on any contested issues.

First, *Casey* involved a case where the plan did not give the plan administrator discretionary authority. *Casey*, 32 F.3d at 1096. The discussion in the case regarding the correct standard of review for factual determination of the plan administrator stems from disagreement in some Circuits about whether *Firestone* required *de novo* review (in cases where no discretionary authority had been given to the administrator) only of benefit denials based upon an *interpretation* of a plan or whether it also required *de novo* review of benefit denials based upon *factual determinations*. *See e.g. Pierre v. Connecticut General Life Ins. Co./Life Ins. Co. of North America*, 932 F.2d 1552 (5th Cir.1991) (holding that an abuse of discretion standard is always the proper standard of review of an administrator's factual determinations).

The Seventh Circuit, in examining this issue in *Ramsey v. Hercules, Inc.*, stated that it found "no meaningful distinction between factual determinations and legal interpretations of plan administrators. The key question is whether the administrator has discretion under the plan." 77 F.3d at 204. Thus, where the administrator does not have discretion under the plan, both factual determinations and legal determinations are reviewed *de novo*. Conversely, where the administrator does have discretion under the plan, both factual determinations and legal determination are reviewed under a more deferential standard of review.

Second, the district court's error was in weighing the facts on a motion for summary judgment. The proper procedure, as explained by the Seventh Circuit, would have been to weigh those facts in a fact-finding proceeding, such as a bench trial.

Third, after the case was remanded to the district court, it in turn remanded the case to the plan administrator to make a determination regarding the plaintiff's mental state at the time of the suicide attempt. *See Casey v. Uddeholm Corp.*, N. 92–C–2156, 1995 WL 680154 (N.D.Ill. November 13, 1995). After the plan administrator made its determination, the district court examined the record before the plan administrator *de novo* and granted summary judgment in favor of the defendants. Therefore, there is clearly persuasive authority that a remand to the plan administrator where the factual determinations have not been made is proper, even where the court reviews the plan administrator's decision *de novo*. *See also Bernstein v. CapitalCare, Inc.*, 70 F.3d 783 (4th Cir. 1995)(where administrative record inadequate to allow district court a meaningful review, remand is necessary).

### III. CONCLUSION

While the Court shares Plaintiff's concern regarding the timeliness of the motion to remand, the administrative record is inadequate. Consequently, the Court finds that a remand is necessary.

Defendant Franklin Life Insurance Company's Motion for Remand is ALLOWED. This case is REMANDED to the Plan Administrator with instructions to receive additional evidence and make a determination as to the extent of Plaintiff's disability and the amount of monthly benefits that would be owed in the event that Plaintiff is found eligible for benefits. Following the Plan Administrator's determination, Plaintiff may, if necessary, file a motion for leave to re-open this case, thus preventing him from incurring the additional costs of filing a new case.

SO ORDERED.

CASE CLOSED.